**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| | * |
| **MARKUS COWARD** | * |
| **Plaintiff,** | * |
| vs. | * |
| **STATE UNIVERSITY OF NEW YORK (Counts I through VI)** * | **COMPLAINT** |
| and | * |
| **STATE UNIVERSITY OF NEW YORK AT BROCKPORT** * | **Index # 6:16-cv-06842** |
| **(Counts I through V)** | * |
| and | * |
| **NAZARETH COLLEGE (As to counts I, II, III and V only)** | * |
| and | * |
| **CATHOLIC CHARITIES OF THE DIOCESES OF** | * |
| **ROCHESTER  (As to Counts VI and VII only)** | * |
| **Defendants,** | * |

_____

### JURY TRIAL DEMANDED

**COMPLAINT AND JURY DEMAND** This cause of action arises from Defendants' discriminatory treatment, including disparate treatment, of Plaintiff during his matriculation in the Greater Rochester Collaborative MSW Program jointly administered by the State University of New York at Brockport, and Nazareth College.  Defendants engaged in disparate treatment based on race, as well as overt acts of racial discrimination, effectively denying Plaintiff access to educational opportunities. This action alleges violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq, 42 US.C §42 U.S.C. § 1981, 42 U.S.C. §  Section 1983, U.S. Const. Amend. XIV, §1, and contract violations. Plaintiff, Markus Coward, by and through his attorneys, Hall Law Firm PLLC, hereby files the following complaint against Defendants as captioned above:

## I. JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331,
    which gives district courts jurisdiction over all civil actions arising under the
    Constitution, laws, and treaties of the United States.

2.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives
    district courts original jurisdiction over (a) any civil action authorized by law to be
    brought by any person to redress the deprivation, under color of any state law, statute,
    ordinance, regulation, custom or usage, of any right, privilege or immunity secured by
    the Constitution of the United States or by any Act of Congress providing for equal
    rights of citizens or of all persons within the jurisdiction of the United States; and (b)
    any civil action to recover damages or to secure equitable relief under any Act of
    Congress providing for the protection of the civil rights.

3.  Plaintiff brings this action to redress a hostile educational environment pursuant to Title
    VI of the Civil Rights Act of 1964 , 42 U.S.C. §2000(d) et seq., and denial of
    educational benefits as more fully set forth herein.

4.  This is an action to redress the deprivation of Plaintiff's rights under 42 U.S. Code §
    1981.

5.  This is also an action to redress the deprivation of Plaintiff's rights under 42 U.S.C.§
    1983.

6.  Plaintiff alleges due process violations against SUNY Brockport and the Greater
    Rochester Collaborative Master of Social Worker program (hereinafter "GRC MSW
    program") under U.S. Const. Amend. XIV, §1.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

8. Plaintiff Markus Coward is an African American male.

9. At all material times Plaintiff Coward was a resident of the County of Monroe, State of New York

10. At the time of events complained of herein, Plaintiff Markus Coward was a student attending the Greater Rochester Collaborative Master of Social Worker program.

11. The Greater Rochester Collaborative Master of Social Worker program is jointly administered by the State University of New York College at Brockport and Nazareth College of Rochester.

12. Upon information and belief, Defendant State University of New York (hereinafter, "SUNY") is a corporation created by New York Education Law § 352.

13. Upon information and belief, Defendant SUNY is responsible for the planning, supervision and administration of facilities and programs approved by the Board of Regents of New York (currently as described in New York Education Law § 237), including at its Brockport, New York campus.

14. Upon information and belief, Defendant SUNY is statutorily charged with providing for higher education supported in whole or in part with state moneys in accordance with the provisions of New York Education Law § 358.

15.   The Defendant State University of New York at Brockport is a public educational institution located in the County of Monroe State of New York.

16.   The Defendant State University of New York at Brockport is a component of the State University of New York.

17.   Upon information and belief, Defendant State University of New York at Brockport ("SUNY Brockport") is a SUNY college consisting of a campus located in Brockport, New York.

18.   Upon information and belief, the President of SUNY Brockport is the chief executive officer of SUNY Brockport, with ultimate oversight responsibility for all operations of SUNY Brockport, including SUNY Brockport's compliance with federal civil rights statutes and constitutional safeguards, as well as compliance with SUNY Brockport contracts.

19.   The office of President of SUNY Brockport  currently is held by Dr. Heidi Macpherson, who reports to Defendant's Board of Trustees.

20.   The Defendant Nazareth College of Rochester (hereinafter "Nazareth College of Rochester," "Nazareth College," or "Nazareth") is a private educational institution located in the County of Monroe, State of New York.

21.   Upon information and belief, Nazareth College was granted incorporation by action of the Board of Regents under the corporate name "Nazareth College" on May 29, 1924; which provisional charter was reincorporated under an absolute charter by Special Act of the Legislature pursuant to Chapter 446 of the Laws of 1925 on April 8, 1925, under the corporate name "Nazareth College"; which absolute charter was amended by

Regents action on April 27, 1951, September 25, 1964 to restate the charter in its entirety and to change the corporate name to "Nazareth College of Rochester," on March 26, 1971.

22. Defendant Catholic Charities of the Dioceses of Rochester is incorporated in the State of New York as a not-for-profit corporation.

23. Upon information and blkeief, Catholic Charities operates Catholic Family Center as a wholly owned subsidiary.


## III.  APPLICABLE  LAW AND POLICY

24. Title VI of the Civil Rights Act of 1964 ("Title VI"), at 42 U.S.C. §2000d et seq., states:

> No person in the United States shall, on the ground of race,
> color, or national origin, be excluded from participation in, be
> denied the benefits of, or be subjected to discrimination under
> any program or activity receiving Federal financial assistance.

25. Title VI is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 100.

26. 34 C.F.R. § 100.3(b)(v) provides that it shall be a violation of Title VI to:

> Treat an individual differently from others in determining
> whether he satisfies any admission, enrollment, quota,
> eligibility, membership or other requirement or condition which
> individuals must meet in order to be provided any service,
> financial aid, or other benefit provided under the program;

27.  The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1.

28.  SUNY Brockport adopted an anti-discrimination policy as set forth in its Student Handbook.

29.  It is significant that the Statement of Nondiscrimination policy contained in the Brockport Student Handbook in effect at the time of the allegations contained in this Complaint, stated that the University will not discriminate based on sex (gender) and disability, and references Title IX (gender), Title VII (employment) and the Americans with Disabilities Act/Section 504 (Disability), but does not reference discrimination against students based on  race, nor does it include any reference to Title VI (race).

30.  Nazareth College adopted an anti-discrimination policy which states in pertinent part:

> **Nondiscrimination Policy**
>
> It is the policy of Nazareth College not to discriminate on the basis of race, color, religion, sex, sexual orientation, gender identity or expression, national or ethnic origin, age, marital or veteran status, disability, career status, genetic predisposition, or any other protected status in the admission of students to the College; in any of the rights, privileges, programs, and activities generally accorded or made available to students at the College; in the administration of its educational policies, admission policies, scholarship and loan programs

and athletic and other programs administered by the College; or in the employment practices of the College.

31.   SUNY Brockport did not, at times relevant to the allegations contained in this Complaint, have a published policy relating to internal complaints of race discrimination in the Student handbook.

32.   Nazareth College does have a policy, as set forth in the Student Handbook, which memorializes the policy and procedure for initiating internal complaints alleging racial discrimination.

33.   Section 1981 (42 U.S.C. §1981) prohibits discrimination in the making and enforcement of contracts by reason of race, including color or national origin.

34.   Section 101 of the Civil Rights Act, codified as 42 U.S.C. § 1981(b) states:

> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

35.   42 U.S.C. Section 1981(c) also prohibits discrimination by private and state actors:

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

36.   42 U.S.C Section 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

## ALLEGATIONS

37.    Plaintiff was subjected to negative stereotypes consistent with negative depictions of African American males.

38.    While Caucasian students were free to openly express their opinions, Plaintiff was characterized as "hostile," " arrogant," and "intimidating" for similar forms of interaction.

39.    Plaintiff was subjected to a hostile academic environment based on race during his academic course work at SUNY Brockport and during his internship with Catholic Family Center.

40.    While assigned to an internship at Catholic Family Center, Plaintiff was subjected to negative stereotypes of African American clients through the comments of the staff of Catholic Family Center.

41.    Examples of racist comments made by staff of Catholic Family Center included referring to one African American Client as a "crazy mother who does not care about children," asserting that African Americans "smell," and a senior member of

Catholic Family Center asserting that African Americans, "think they can come in here and get whatever they want," and stating with reference to African American clients "I don't even ask if they have weapons, I just ask where they are."

42. When Plaintiff expressed his objections to these negative characterizations of African American clients based on their race, as well as for other improper reasons, he was removed from his internship.

43. Defendants premised their expulsion of Plaintiff on alleged acts for which Caucasian students were not cited, let alone disciplined.

44. An example of such disparate treatment was Defendants' application of the absence/tardiness guidelines.

45. Defendants premised their disciplinary actions upon Plaintiff's infrequent occasions of tardiness, or absence.

46. Upon information and belief, both Caucasian faculty members and Caucasian students exceeded the number of absence and severity of tardiness attributed to Plaintiff.

47. Upon information and belief, there were faculty and Caucasian students with more significant infractions of the absence/tardiness policy.

48. Plaintiff was never provided with written disciplinary warnings that his performance in the Catholic Family Center Internship was inadequate and not meeting the expectations of the Program.

49.     Plaintiff was never provided with written disciplinary warnings that his performance in the academic portion of the Program was not at aceptable standards, or not meeting the expectations of the Program staff.

50.     Plaintiff was not afforded proper due process procedural safeguards prior to Defendants' expulsion decision.

51.     Plaintiff's advisor Pamela Vigiani did not adequately advise and prepare Plaintiff for his appeal hearing.

52.     Plaintiff was advised by another member of the faculty to remain silent during the hearing which ultimately resulted in his expulsion, as he was considered to be an "aggressive," African American male.

53.     The advice described in paragraph 52 above, was consistent with Plaintiff's treatment as an African American male during the course of his studies in the Program.

54.     Plaintiff was advised by a faculty member to provide no defense as to any allegations against him, without regard to that allegation's truthfulness or falsity, as it would reinforce the negative stereotype of an aggresive African American male, with which he had been labeled.

55.     Upon information and belief, the faculty member cautioning Plaintiff to remain silent during his hearing did so in response to that faculty member's personal observations of Defendants' treatment of Plaintiff as an African American male.

56.     Upon information and belief, SUNY Brockport refused to allow faculty members to provide relevant information in support of Plaintiff's appeal defense.

57.     As an example of Defendants' interference with Plaintiff's due process rights, a faculty member who promised to provide a written statement in defense of Plaintiff, refused to take his calls in the two days prior to the hearing, and thereafter refused to provide the written statement previously promised to Plaintiff.

58.     Upon information and belief, after Plaintiff's dismissal from the GRC MSW program, faculty members at both SUNY Brockport and Nazareth College were compelled to not speak or provide assistance to Plaintiff in attempting to prepare an internal complaint alleging race discrimination.

59.     Defendants' representative at Nazareth College issued a written communication to members of the faculty instructing them to not respond to those assisting Plaintiff in his defense.

60.     Interference with Plaintiff's attempts to redress his complaints of racial discrimination at both SUNY Brockport and Nazareth College continue to this day.

61.     Upon information and belief, SUNY Brockport and Nazareth College have intimidated, coerced and threatened faculty and staff at both institutions who attempted to provide Plaintiff with meaningful assistance in bringing his proposed internal complaint of racial harassment to each institutions' attention.

62.     These actions by SUNY Brockport and Nazareth College deprived Plaintiff of his right of internal redress for his claims of racial discrimination, and denied Plaintiff due process.

63.     Upon information and belief, the faculty member advising Plaintiff to remain silent during the appeal hearing did so based on her belief that the College Administration

viewed him as a threatening African American male, due to Plaintiff's respectful assessments of various aspects of how the Program was constructed and implemented.

64.     Upon information and belief, the faculty member advising Plaintiff to remain silent did so as certain program administrators and faculty viewed Plaintiff as an aggressive, African American male.

65.     Caucasian students were not viewed in a negative light for advancing their assessments as to deficiencies in the program, or other aspects of the GRC MSW program, including illegal activities which were required by the Program Administrators of the GRC MSW program of GRC MSW interns.

66.     Plaintiff was not afforded a meaningful academic experience as a result of racial animus by certain faculty members of SUNY Brockport.

67.     Plaintiff was not afforded a meaningful academic experience as a result of racial animus by certain faculty members of Nazareth College

68.     Upon information and belief, Plaintiff was not treated in accordance with training provided to SUNY Brockport administration and staff as to handling matters which could result in academic suspension or expulsion.

69.     The allegations contained in Paragraph 68 were related to Plaintiff by a member of Defendants' administration.

70.     Upon information and belief, Plaintiff was subjected to more serious negative sanctions by SUNY Brockport and Nazareth College than were Caucasian students for similar alleged infractions.

**PLAINTIFF'S ACADEMIC EXPERIENCE DURING THE GRC MSW PROGRAM.**

71.    Plaintiff was subjected to intentional, disparate treatment and a hostile environment based on racial animus during the course of his academic and internship program.

72.    Plaintiff was subjected to comments by employees of Catholic Family Center which portrayed African Americans in a racially derogatory manner.

73.    Plaintiff was held to more demanding standards by Defendants during his internship than were non-African American interns.

74.    Such intentionally disparate treatment included, but was not limited to, treatment under Defendants' absence/tardiness policies, assignment and reassignment to internship opportunities, availability of coaching, mentoring, and guidance, due process protections, and failure to investigate and remediate hostile educational environments based on race.

75.    Plaintiff continually expressed concerns as to supervision, mentoring, and racially biased conduct by members of the Catholic Family Center.

76.    Plaintiff expressed his strong concerns about his internship experience, including the lack of supervision and guidance when assigned to provide services requiring a professional license, and for other functions to which he was assigned at Catholic Family Center.

77.    The reports of inappropriate assignments, racist behavior and other concerns, were brought to Defendants' employees David Hall and Michael Stone on several occasions.

78.     Plaintiff's protestations, as set forth above, were ignored by Michael Stone, David
        Hall, and others.

79.     These pleas for help and an alternate internship made to Defendants' employees
        Michael Stone and David Hall were not acted upon, and no corrective action as to
        the deficiencies of the Catholic Family Center internship was taken by either
        employee, or any other employee of either Defendant.

80.     During his assignment to Catholic Family Center, Plaintiff requested reassignment to
        an internship opportunity which more closely met his educational needs.

81.     Plaintiff's request for an internship opportunity was premised upon an available
        internship which accommodated his background experiences and employment
        prospects far more closely than his assignment at Catholic Family Center.

82.     This alternate internship assignment, if granted, would have resulted in Plaintiff not
        being subjected to racist environment at Catholic Family Center.

83.     Plaintiff petitioned for this alternate internship opportunity which would not have
        required that he provide services requiring a professional license.

84.     Plaintiff petitioned for an internship opportunity which would have provided
        appropriate instruction, guidance, and supervision.

85.     A white intern who expressed concerns about their internship experience was
        reassigned to another internship opportunity at approximately the same time as
        Plaintiff's internship with Catholic Family Center.

86.     Plaintiff was denied this request for an internship which would have met the criteria
        set forth in paragraphs 71 to 85 above.

87.     Defendants' refusal to assign Plaintiff to an alternate internship, while granting the request of a Caucasian for an alternate assignment, constitutes disparate treatment.

88.     The internship for which Plaintiff petitioned was open, and Plaintiff would not have displaced any other students had this request been granted.

89.     The quality of the internship which was denied to Plaintiff far exceeded the quality of the internship to which he was assigned.

90.     Had Plaintiff successfully completed the internship to which he requested transfer, there was a high probability that he would have been offered a lucrative, permanent position with that employer upon graduation.

91.     Upon information and belief, Defendants acted out of illegal, intentional, discriminatory animus.


**PROGRAM DEFICIENCIES IN THE GRC MSW PROGRAM**

92.     Defendants failed to properly supervise Plaintiff during his internship program at Catholic Family Center.

93.     Defendants failed to provide proper oversight of the internship program at Catholic Family Center.

94.     Defendants failed to provide instruction to Plaintiff during the internship program commensurate with the responsibilities of that internship.

95.     The Catholic Family Center internship, required Plaintiff to provide unlicensed services to clients at Catholic Family Center.

96.     Defendants required Plaintiff to meet with clients at Catholic Family Center without the support or guidance of properly licensed professionals.

97.     During these meetings with clients at Catholic Family Center, Plaintiff was required to provide diagnoses of clients' psychological conditions.

98.     During these meetings with clients at Catholic Family Center, Plaintiff was required to provide counseling to clients without the support, oversight or attendance of properly licensed professionals.

99.     By their acts, or failures to act, Defendants placed clients of Catholic Family Center at great risk of physical or psychological harm.

100.    By their acts, or failure to act, Defendants caused Plaintiff to oppose Catholic Family Center's illegal and medically inappropriate conduct.

101.    As a result of Plaintiff's opposition to the illegal and medically inappropriate requirements imposed by Defendants during Plaintiff's internship with Catholic Family Center, Catholic Family Center refused to allow Plaintiff to continue his internship at their facility.

102.    As a result of Plaintiff's opposition to the intentional, racially hostile behavior of Catholic Family Center, Plaintiff was removed from that internship.

103.    Upon information and belief, Catholic Family Center requested Plaintiff be expelled from the GRC MSW program.

104.    As a result of the racial animus exhibited by Catholic Family Center and Defendants, and Defendants opposition to Plaintiff's demands that he not be assigned to activities requiring a professional license, Plaintiff was expelled from the GRC MSW program.

105.   As a result of Plaintiff's opposition to Defendants' failure to properly instruct, oversee, supervise and respond to Catholic Family Center's requirements that interns provide unlicensed services to clients, Plaintiff was expelled from the GRC MSW program.

106.   As a result of Plaintiff's opposition to Defendants' failure to properly instruct, oversee, supervise students in the GRC MSW program, Plaintiff was expelled.

107.   Caucasian students in the GRC MSW program were not similarly disciplined.


**COUNT I**

**VIOLATION OF TITLE VI AS TO DEFENDANT BROCKPORT AND NAZARETH'S DISPARATE TREATMENT OF PLAINTIFF
(42 U.S.C. §2000d et seq.)**

108.   Paragraphs 1 through 107 are incorporated by reference as if stated in full herein.

109.   The race-based harassment articulated in Sections IV, V, VI of this Complaint, was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

110.   The Defendants, SUNY Brockport and Nazareth College, created and/or subjected Plaintiff to a hostile educational environment in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), because:

a) Plaintiff was a member of a protected class;

b) Plaintiff was subjected to discrimination in the form of intentinal, disparate treatment, racial stereotypes, and limitations as to his academic program, a

hostile educational environment based on race, to which Caucasian students were not subjected;

c) Plaintiff was subjected to discrimination based on his race; and

d) Plaintiff was subjected to a hostile educational environment created by SUNY Brockport and Nazareth College based on the actions of the faculty and staff during both the academic and internships phases of his program, including comments by employees of Catholic Family Center and refusal to provide educational opportunities that were provided to Caucasian students.

111. The Defendants failed to afford Plaintiff due process in the manner required by the rules and regulations of SUNY Brockport.

112. Upon information and belief, Caucasian students were afforded the procedural due processes set forth by SUNY Brockport.

113. This deprivation of Plaintiff's due process rights constituted intentional disparate treatment against African Americans, and had a disparate impact on Plaintiff as a member of that class.

114. Defendant Schools failed to take immediate, effective remedial steps to resolve the complaints of racial discrimination and instead acted with deliberate indifference toward Plaintiff.

115. Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade Plaintiff from continuing on with his academic program, including the internship component, because of his race and opposition to illegal, discriminatory practices.

116.    Plaintiff has suffered emotional distress and psychological damage, and his character

and standing in his community have suffered from the harassment fostered as a direct

and proximate result of Defendants' deliberate indifference to his rights under Title

VI.

## COUNT II

### VIOLATION OF TITLE VI -
### (42 U.S.C. §2000d et seq.)
### (Retaliation by Withholding Protections Otherwise Conferred by Title VI)

117.    Paragraphs 1 through 116 are incorporated by reference as if stated in full herein.

118.    The race-based harassment articulated in Sections IV, V, VI of this Complaint was

so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to

educational opportunities or benefits provided by the school.

119.    The Defendants SUNY Brockport and Nazareth College created and/or subjected

Plaintiff to a hostile educational environment in violation of Title VI of the Civil

Rights Act of 1964 ("Title VI"), because:

a) Plaintiff was a member of a protected class;

b) Plaintiff was subjected to discrimination in the form of disparate treatment,

racial stereotypes, and limitations as to his academic program to which

Caucasian students were not subjected;

c) Plaintiff was subjected to discrimination based on his race and disability;

d) Plaintiff was subjected to a hostile educational environment created by SUNY

Brockport and Nazareth College based on the actions of the faculty and staff

during both the academic and internships phases of his program, comments by employees of Catholic Family Center and refusal to provide educational opportunities that were provided to Caucasian students; and,

e) Plaintiff was disciplined and expelled when he opposed these practices, including a hostile educational environment based on race.

120. The Defendant's failed to afford Plaintiff due process in the manner required by the rules and regulations of SUNY Brockport, or in a manner which comports to adequate due process.

121. Upon information and belief, Caucasian students were afforded the procedural due processes set forth by SUNY Brockport.

122.  Defendant Schools failed to take immediate, effective remedial steps to resolve the complaints of racial discrimination, and instead acted with deliberate indifference toward Plaintiff.

123. Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade Plaintiff from continuing with his academic program, including the internship component as a result to his opposition to the illegal discriminatory practices of Defendants.

124. This deprivation of Plaintiff's due process rights constituted retaliation for opposing disparate treatment, and other illegal race based behaviors as set forth with particularity in this Complaint, against African Americans.

125. When Plaintiff opposed the racial animus of Defendants, he was disciplined and expelled from his academic program.

126.    As a result of Plaintiff's refusal to conform his services to the requirements of

Defendants, including providing unlicensed services to clients of Catholic Family

Center, Defendants disciplined and expelled Plaintiff from his academic program.

127.    As a result of Defendants' conduct, Plaintiff has suffered emotional distress and

psychological damage, his character and standing in his community have suffered,

and he has lost the past, present and future benefits of his efforts in the academic

program leading to a Masters Degree,  as a direct and proximate result of

Defendants' deliberate indifference to his rights under Title VI.


## COUNT III

### VIOLATION OF PLAINTIFF'S RIGHTS IN THE MAKING AND ENFORCEMENT OF CONTRACTS BY REASON OF RACE (42 U.S.C. § 1981)

128.    Paragraphs 1  through 127 are hereby incorporated by reference as if set forth in full

herein.

129.    Defendants SUNY Brockport and Nazareth College violated Plaintiff's right to make

and enforce contracts by:

a. Failure to provide an educational environment free of racial hostility;

b. Failing to take immediate and appropriate action to investigate or

otherwise determine what occurred once informed of possible discrimination;

c. Failing to take prompt and effective steps to end the discrimination,

prevent its recurrence, and address its effects;

       d. Failing to take steps to protect the Plaintiff as necessary, during the course of his internship;

       e. Failing to provide an academic program free from the illegal effects of race discrimination.

130.    Defendants SUNY Brockport and Nazareth also violated Plaintiff's Section 1981 rights by failing to properly train and supervise its employees as to these mandated requirements.

131.    These policies and/or practices constitute disparate treatment of African Americans and had a disparate impact on African American students, including Plaintiff.

132.    Defendants' acts, and failure to act, resulted in Plaintiff's loss of his right to make and enforce contracts in a manner similar to his non-African American counterparts.

133.    Defendants' acts, and failure to act, in protecting Plaintiff's rights to make and enforce contracts without regard to his race, were the proximate cause of Plaintiff's emotional distress and psychological damage, his loss of character and standing in his community, and his loss of past, present and future benefit of his academic work.

## COUNT IV

### DEPRIVATION OF RIGHTS
### (42 U.S.C. 1983 and U.S. Const. Amend. XIV, §1. )

134.    Paragraphs 1 through 133 are incorporated by reference as if stated in full herein.

135.    Defendant SUNY Brockport, by and through their conduct as set forth above, deprived Plaintiff of his right to due process.

136.    Defendants SUNY and SUNY Brockport, deprived Plaintiff of his right to make and enforce contracts, as set forth with particularity above.

137.    Defendant SUNY Brockport deprived Plaintiff of his right to an education without the impediment of a hostile environment based on race as set forth with particularity above.

138.    Defendant SUNY Brockport deprived Plaintiff of his right to speak freely against government actors without fear of reprisal as set forth with particularity above.

139.    Defendant SUNY Brockport deprived Plaintiff of his right to make and enforce contracts on the same basis as Caucasian students of SUNY Brockport as set forth with particularity above.

140.    Defendants' acts, and failure to act, in protecting Plaintiff's rights to make and enforce contracts without regard to his race, were the proximate cause of Plaintiff's emotional distress and psychological damage, his loss of character and standing in his community, and his loss of past, present and future benefit of his academic work

COUNT V

CONTRACT VIOLATIONS

141.    Paragraphs 1 through 140 are incorporated by reference as if stated in full herein.

142.    Defendants owed Plaintiff a duty of performance based on the policies, procedures

and obligations set forth in Defendants' Student Handbooks, published policies and

procedures relating to non-discrimination based on race, procedural due process as

set forth in Defendants' policies and procedures guaranteeing review and due

process with respect to academic actions, and Defendants' legal obligations to

enforce state and federal anti-discrimination statutes.

143.    The race-based harassment articulated in the Sections IV, V, VI of this Complaint,

was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access

to educational opportunities or benefits provided by the Defendants, thus denying

Plaintiff the benefits of his contractual bargain with Defendants.

144.    Defendants SUNY Brockport and Nazareth College created and/or subjected

Plaintiff to a hostile educational environment in violation of Title VI of the Civil

Rights Act of 1964 ("Title VI"), because:

   a) Plaintiff was a member of a protected class;

   b) Plaintiff was subjected to discrimination in the form of disparate treatment,

   racial stereotypes, and limitations as to his academic program to which

   Caucasian students were not subjected;

   c) Plaintiff was subjected to discrimination based on his race and disability; and

   d) Plaintiff was subjected to a hostile educational environment created by SUNY,

   SUNY Brockport, and Nazareth College based on the acts, or failure to act, of

   the faculty and staff during both the academic and internship phases of Plaintiff's

   program, comments by employees of Catholic Family Center, and refusal to

provide educational opportunities on the same basis as were provided to Caucasian students.

145.    Defendants failed to afford Plaintiff due process in the manner required by the rules, policies, and regulations of SUNY Brockport and Nazareth College as set forth with particularity, above.

146.    The deprivation of Plaintiff's due process rights constituted a denial of the benefits of the bargain as set forth in the expressed and implied contract between Plaintiff and Defendants, as described in Defendants' policies and procedures delineating the appeal processes of both institutions.

147.    Further, upon information and belief, Caucasian students were afforded the procedural due processes set forth by SUNY, SUNY Brockport, and Nazareth College in their respective policies and procedures.

148.    Defendant Schools failed to take immediate, effective remedial steps to resolve the complaints of racial discrimination and instead acted with deliberate indifference toward Plaintiff's rights.

149.    Defendants' acts, or failure to act, was in contravention of the expressed and implied contract provisions established between Defendants and Plaintiff, breaching their duty to Plaintiff.

150.    Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade Plaintiff from continuing on with his academic program, including the internship component, as set forth with particularity above.

151.    Defendants attempted to coerce Plaintiff into providing services for which he was neither trained, legally authorized, nor licensed, as set forth with particularity above.

152.    When Plaintiff opposed the racial animus of Defendants, he was disciplined and expelled from his academic program in violation of the expressed and implied contract established between the Defendants and the Plaintiff.

153.    Defendants' conduct violated their own policies, procedures, and enunciated conditions of participation in their educational program as set forth with particularity above.

154.    Plaintiff enrolled in Defendants' program, and paid for such enrollment, constituting a valid offer and acceptance between the Defendants and Plaintiff.

155.    The terms of the offer and acceptance forming the contract between the Defendants and Plaintiff were memorialized in Defendants' policies, procedures, regulations, applications, and requirements, as well as Defendants' legal obligations to comply and enforce obligations codified in state and federal statutes as well as state and federal constitutional provisions.

156.    Defendants' conduct, as set forth with particularity above, constitutes a breach of the express and implied contract between the Defendants and Plaintiff.

157.    As a result of Defendants' willful conduct, which manifested in intentional contract violations, Plaintiff has suffered emotional distress and psychological damage, his character and standing in his community have suffered, and he has lost the past, present and future benefits of his efforts in the academic program leading to an MSW Degree.


**COUNT VI (AS TO CATHOLIC CHARITIES ONLY)**

## RETALIATION FOR DISCLOSING A SUBSTANTIAL AND SPECIFIC DENGER TO PUBLIC HEALTH AND SAFETY
## ( N.Y. Lab. Law § 741)

158.   Paragraphs 1 through 157 are incorporated by reference as if stated in full herein.

159.   Defendant Catholic Family Center, a regional agency of Catholic Charities, provides psychological and diagnostic counseling services to poor and indigent members of the local commuinty.

160.   Upon information and belief, Catholic Family Center utilizes unlicensed GRC MSW interns to diagnosis of clients suffering from mental illnesses.

161.   Upon information and belief, Catholic Family Center utilizes interns in the GRC MSW program to provide psychological counseling services to clients suffering from mental illnesses.

162.   Plaintiff Markus Coward was required, as part of his degree requirements to perform such diagnosis and counseling services to clients of Catholic Family Center.

163.   When Plaintiff Markus Coward informed Defendants SUNY Brockport, Nazareth College and Catholic Family Center that he was neither trained, licensed, nor capable of providing diagnostic services or counseling to clients of Catholic Family Center.

164.   Plaintiff informed Defendants SUNY Brockport, Nazareth College and Catholic FamilyCenter that he required supervision and support from licensed professionals when meeting with clients requiring diagnstic and counseling services.

165.   As a result of the expression of his concerns, Plaintiff was removed from his internship and expelled from the GRC MSW program.

166.   As a result of Defendants' willful retaliatory conduct, Plaintiff has suffered emotional

distress and psychological damage, his character and standing in his community have

suffered, and he has lost the past, present and future benefits of his efforts in the

academic program leading to an MSW Degree.

## COUNT VII - (AS TO CATHOLIC CHARITIES ONLY)
## TORTUOUS INTERFERENCE WITH CONTRACT

167.   Paragraphs 1 through 166 are incorporated by reference as if stated in full herein.

168.   Plaintiff and Defendants SUNY, SUNY Brockport and Nazareth College had a valid

contract for academic services culminating in a MSW degree.

169.   Catholic Charities, through their subsidiary Catholic Family Center, was awae of this

contract.

170.   As a result of Catholic Services' subsidiary Catholic Family Center's retaliation

against Plaintiff for opposing the improper provision of services to clients and

opposing Catholic Family Center's discriminatory condct based on race, Plaintiff was

expelled from the GRC MSW program.

171.   Catholic Services subsidiary Catholic Family Center's conduct was intentional and

deliberate.

172.   By and through their actions, Catholic Services, through their subsidiary Catholic

Family Center, caused Plaintiff to be expelled from his academic program in the

GRC MSW program resulting in emotional distress and psychological damage, his

character and standing in his community have suffered, and he has lost the past,

present and future benefits of his efforts in the academic program leading to an MSW Degree.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against Defendants SUNY Brockport and Nazareth College, as follows:

A. Compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in his community, damage to his reputation, and out of pocket expenses incurred in response to these circumstances;

B. Punitive damages;

C. Payment for loss of past, present and future benefits of completion of his academic professional degree, including, but not limited to, loss of past, present and future earnings;

D. Injunctive relief requiring Defendants SUNY, SUNY Brockport and Nazareth College to take effective steps to prevent race and disability based discrimination and harassment; fully investigate conduct that may constitute illegal race-based discrimination and harassment; appropriately respond to all conduct that may constitute such discrimination and harassment; and mitigate the effects of discrimination including effective efforts to eliminate any hostile environment that may arise from or contribute to it.

E. Injunctive relief requiring Defendant Catholic Services to cease

and from utilizing interns from providing services requiring a

professional license.

E. Statutory interest;

F. Costs; and

F. Reasonable attorney fees.


**JURY DEMAND**

**Now Comes the Plaintiff**, Markus Coward, by and through his attorneys, Hall Law Firm

PLLC and demands a trial by jury.


Dated:    December 27, 2016
          Fairport, New York


HALL LAW FIRM

_____/S/_____

Earl Thomas Hall
4 Wenlock Rd.
Fairport, New York 14450
Tel: (585) 244-8743
Facsimile: 888-866-6920
email: ehall@hall-law-firm.com